IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE ZIMMERMAN | : | |
| Plaintiff, | : | |
| v. | : | Civil Action. No.: 5:24-cv-01142 |
| HEALTH NETWORK LABRATORIES, L.P., | : | Jury Trial Demanded |
| Defendant. | : | |

## OPINION

Nicole Zimmerman (Plaintiff/Ms. Zimmerman) brings this suit against current employer, Health Network Laboratories, L.P. (Defendant/HNL),[1] alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, et seq., and the Pennsylvania Medical Marijuana Act (MMA), 35 P.S. § 1231.2103. (DKT #9). Currently before this Court is Defendant's Motion for Summary Judgment. (DKT #19). For the following reasons, Defendant's Motion is granted with respect to Plaintiff's ADA claim. Further, this Court declines to exercise supplemental jurisdiction over Plaintiff's derivative state-law claims.

### I. Background

Defendant is a laboratory testing company with approximately fifty (50) locations and fifteen-hundred (1500) employees. Def.'s Mot. Summ. J. at Ex B

---

[1] For the sake of consistency, the parties and this Court have referred to Defendant as Health Network Laboratories, L.P. in the caption of filings. Defendant's proper legal name is Health Network Laboratories, LLC. As of the filing of this lawsuit Plaintiff was still employed with Defendant.

1

("Kubat Dep.") at 15:4-10. Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD") and Generalized Anxiety Disorder ("GAD") and uses medical marijuana to support her treatment for these diagnoses. Pl.'s Compl. at 4.

On March 3, 2022, Plaintiff was offered and accepted the position of Phlebotomist II with Defendant. Kubat Dep. at Ex. C. Plaintiff had prior training and experience with phlebotomy, which involves performing venipunctures, and obtaining blood specimens, cultures, and urine samples. Official correspondence offering Plaintiff the position expressly stated that her employment was "contingent upon … [the] successful completion of a pre-employment physical, **including drug screening**[.]" *Id.* (emphasis added). Based on Defendant's workplace policy in use at the time, any positive result for marijuana on a drug screening disqualified prospective employees from what were deemed "safety-sensitive" positions – those entailing significant direct patient contact. Kubat Dep., 35:23 – 36:2. The policy made no mention of medicinal marijuana use. *Id.* at Ex. B.

On March 21, 2022, as part of the onboarding process, Defendant directed Plaintiff to complete a drug screening with third-party administrator Lehigh Valley Health Network's Employee Health Department (LVH). DKT #21 (Pl.'s Resp. Opp'n.) at 1. When Plaintiff reported to LVH for her drug screening, she disclosed her diagnoses and use of medical marijuana to its personnel. Def.'s Mot. Summ. J. at Ex. A ("Zimmerman Dep.") at 18:13-24. On March 28, 2022, with the results of her drug test still pending, Plaintiff began her training period as a Phlebotomist II for Defendant. Pl.'s Resp. Opp'n at 1.

2

On April 1, 2022, LVH informed Defendant's Human Resources Director, Joshua Kubat (Mr. Kubat), that Plaintiff's medical clearance was on hold. Kubat Dep., at Ex. G. Shortly thereafter Mr. Kubat met with Plaintiff who informed him that LVH had requested certain documentation with respect to her medical marijuana treatment. Pl.'s Resp. Opp'n at 2. In response to LVH's medical hold and request for documentation, "Plaintiff submitted her medical marijuana card, receipts of her medical marijuana purchases, and a medical certification from a Dr. Gail Kramer, which identified her diagnoses of PTSD and GAD and indicated that she was prescribed medical marijuana and the medication Effexor to treat those disabilities." *Id.*

LVH ultimately deemed this documentation incomplete. Specifically, LVH determined that the receipts did not have any "identifiers" and that they indicated dates of sale outside of the effective dates of Plaintiff's Medical Marijuana ID.[2] Kubat Dep. at Ex F, G. As a result of Ms. Zimmerman's positive drug screening, Defendant declined to continue her employ as a Phlebotomist II. On April 13, 2022, Ms. Zimmerman was instead offered a position as a Laboratory Assistant[3] which constituted a demotion with a lower hourly rate of pay. Pl.'s Compl. at 5.

---

[2] Plaintiff's Pennsylvania Medical Marijuana Identification Card was issued March 17, 2022 – *after* she received her March 3, 2022 offer letter. Kubat Dep., at Ex. F. Plaintiff's deposition testimony also indicates that this would have been Plaintiff's first Medical Marijuana Identification Card. Zimmerman Dep., 26:19 – 27:24. These uncontested facts counter Plaintiff's claimed medical necessity and supervised use. The fact that she obtained her medical marijuana ID *after* receiving her job offer, but *before* her required drug screening, indicates a retroactive attempt to justify what she expected to be a positive drug test. That said, this Court's ruling does not turn on any credibility determinations, but instead focuses only on whether, based on the record, Ms. Zimmerman is entitled to ADA protection.

[3] Laboratory Assistants do not perform venipunctures and do not have any direct patient contact. Thus, it is not considered a safety-sensitive position precluding the use of medical marijuana.

On September 15, 2022, Ms. Zimmerman dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC). Pl.'s Compl. at 2. On October 24, 2023, Ms. Zimmerman received a Right to Sue letter from the PHRC regarding her Charge of Discrimination, advising her that she had two (2) years to file suit against Defendant. *Id.* On November 28, 2023, the EEOC issued to Ms. Zimmerman a Right to Sue letter advising that she had ninety (90) days to file suit against Defendant. *Id.* This notice was sent via physical mail to the address the EEOC had on file, however, Ms. Zimmerman had moved from that address sometime in January of 2022.[4] *Id.*

Ms. Zimmerman commenced this action on March 14, 2024.[5] Specifically, she alleges that Defendant discriminated against her by demoting her to a position at a lesser hourly wage due to her status as a medical marijuana card holder and her use of anti-depressants (Effexor). Pl.'s Compl. at 5-6. The Defendant now moves for summary judgment on several grounds.

## II. Legal Standard

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [] judgment as a matter of law." *Mann v. Palmerton Area School District*, 872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation marks omitted). A

---

[4] Plaintiff asserts she continued to receive mail at this address.
[5] Both parties have briefed the issue of whether the ninety (90) day limitations period for ADA claims had expired prior to Ms. Zimmerman filing suit. Because this Court has disposed of this case on an alternative basis, there is no reason to resolve the limitations issue.

fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving "under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 819-820 (3d Cir. 2006) (citations omitted) (internal quotation marks omitted)

The movant's initial burden does not relieve complainant's obligation of producing evidence that would support a jury verdict. *Anderson*, 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the opposing party must advance specific facts showing that there is a genuine dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. If the "evidence presented by the non-movant is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250.

III. Discussion

Ms. Zimmerman alleges that Defendant discriminated against her on the basis of disability in violation of the ADA by demoting her "because of her actual and/or perceived disabilities as well as her status as an individual who is certified to use

5

medical marijuana." Pl.'s Compl. at 5-6. Defendant counters that Ms. Zimmerman's reassignment to a different position was based on an internal workplace policy that deemed Phlebotomist II a "safety-sensitive" position. Kubat Dep., 30:12 – 34:2; Ex. I at 2. Ms. Zimmerman was instead offered a position without the "safety-sensitive" designation that did not preclude use of medical marijuana. *Id.* at Ex. I at 4.

The ADA prohibits employers from discriminating against employees based on a disability. 42 U.S.C. § 12112(a). Claims under the ADA are analyzed under the oft-cited burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). A plaintiff seeking recovery pursuant to the ADA must first establish a *prima facie* case of discrimination.

To do this, a plaintiff must show: "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir.1998). The Third Circuit has cautioned that the elements of a *prima facie* case should not be applied woodenly but should be tailored flexible to fit the circumstances of the alleged discrimination. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008).

Once Plaintiff makes a *prima facie* showing of discrimination, the burden "shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 370. If and when the defendant meets this burden, plaintiff must show that the legitimate reasons offered by the defendant are a pretext for the discrimination alleged.

In this case, Defendant moves for summary judgment on the grounds that Ms. Zimmerman's status as a medical marijuana user precludes her from claiming the protections afforded to qualified individuals with a disability under the ADA.[6] *See* Def.'s Mot. Summ. J. at 11. Accordingly, Defendant asserts that Ms. Zimmerman cannot establish a *prima facie* case of discrimination under the ADA. Defendant further argues that its decision was based solely on legitimate, nondiscriminatory considerations. *Id.* at 13.

The ADA defines a qualified individual as someone "who, with or without reasonable accommodations, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A qualified individual "shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). The ADA defines illegal drug use consistent with the definition contained in the Controlled Substance Act (CSA), which classifies marijuana as a Schedule I illegal substance.[7] *See* 21 U.S.C. § 812. Finally, the ADA specifically excepts from its definition of "illegal drugs" those drugs taken under supervision by a licensed health care professional. 42 U.S.C. § 12111(6)(A). This is often referred to as the "Supervised Use Exception." *See James v. City of Costa Mesa*, 700 F.3d 394, 398-399 (9th Cir. 2012).[8]

---

[6] Defendant has actually raised several grounds for dismissal at this stage. However, this Court has decided to rule on what it views as the narrowest possible grounds.

[7] A Schedule I classification denotes a particular drug's high potential for abuse and lack of safety and/or accepted medical use in treatment. 21 U.S.C. § 812(b)(1).

[8] Ms. Zimmerman does not specifically plead the Supervised Use Exception in any of her filings. However, her complaint asserts the alleged discrimination was due in part to "her status as an individual who is **certified** to use medical marijuana." EFC No. 9 at 5 (emphasis added).

More than thirty-five (35) states, either through legislation or ballot initiative, have authorized the use of marijuana for medicinal purposes. *See* Robert M. Lydon, *High Anxiety: Forcing Medical Marijuana Patients to Choose Between Employment and Treatment*, 63 B.C.L.Rev. 623, 624-625. Despite the increasing number of people registered as medical marijuana "patients," marijuana remains illegal under federal law. Notwithstanding this federal prohibition, the pattern among the states trends toward an embrace of legalization. To be sure, this dynamic will continue to raise interesting questions of federalism and conflict preemption as state legislatures explore marijuana's efficacy in medical treatment. *See id.* at 648-649.

Nonetheless, the district courts that have directly engaged the issue of whether an individual who is prescribed medical marijuana can state a *prima facie* case under the ADA for discrimination based on marijuana use consistent with their prescription have concluded that they cannot. *See Drift v. Diamond Materials LLC*, No. 22-7503, 2023 WL 5321061, at *3 (D.N.J. Aug. 18, 2023); *Huntley-El v. Broadway Services LLC*, No. 1:24-cv-01956, 2024 WL 4932581, at *5 (D. Md. Dec. 2, 2024) (*citing Eccleston v. City of Waterbury*, No. 3:19-cv-1614, 2021 WL 1090754, at *6 (D. Conn. Mar. 22, 2021). In *Eccleston*, the District Court of Connecticut held that a firefighter, lawfully prescribed medical marijuana under Connecticut state law, was not protected as a qualified individual under the ADA. *See Eccleston*, at *6. The Court explained that to hold "otherwise would place [the ADA] in direct tension with the clear provisions of the CSA—a statute the ADA relies upon to define the term "illegal drug use." *See id.* (*citing James*, 700 F.3d at 404).

Similarly, the District Court of Colorado held termination on account of complainant's medical marijuana use did not constitute discrimination under the ADA. *Steele v. Stallion Rockies Ltd*, 106 F.Supp.3d 1205, 1218 (D. Colo. 2015); *see also Anderson v. Diamondback Investment Group*, 117 F.4th 165 (4th Cir. 2024) (terminating individuals taking illegal drugs to treat a disability is permissible, so long as the goal of the drug testing scheme does not intentionally exclude any individual taking a *lawfully prescribed* drug to treat a disability); *Zarazua v. Ricketts*, 8:17CV318, 2017 WL 6503395, at *2 (D. Neb. Oct. 2, 2017) (exception for medical marijuana in state law is not a reasonable accommodation under the ADA); *Barber v. Gonzalez* No. CV-05-0173, 2005 WL 1607189, at *1 (E.D. Wash. Jul. 1, 2005) (physician supervised drug use must be authorized under the Controlled Substances Act or other provisions of Federal law, regardless of any state law authorization).

Consistent with analysis advanced in the cases cited above, medical marijuana "is an illegal use of drugs for purposes of the ADA." *James*, 700 F.3d at 405. Accordingly, this Court concludes that employees properly prescribed marijuana in compliance with Pennsylvania law, who then experience adverse employment determinations based on that use, are not "qualified individuals" contemplated at 42 U.S.C. § 12101, et seq. Although this specific issue has not been decided by the Third Circuit, this Court's conclusion accords with caselaw within the Circuit examining failed drug tests in slightly different factual contexts. *See Drift, supra* (use of marijuana precludes and individual from being "qualified" under the ADA if the employer acts on this use); *Lehenky v. Toshiba America Energy Systems Corp.*, No. 20-4573, 2022 WL 523739, at *3 (E.D. Pa. 2022) (over-the-counter CBD product

resulting in positive drug test and subsequent termination not covered by ADA), *aff'd*, 2023 WL 3562981 (3d Cir. May 19, 2023). As such, Plaintiff cannot make a *prima facie* showing of discrimination to even engage the *McDonnell Douglas* burden shifting framework in the first place.

Assuming this Court were to engage in a *McDonnell Douglas* analysis, Ms. Zimmerman has failed to introduce evidence creating a genuine issue of material fact as to whether the Defendant's stated reason for the adverse employment action was pretextual. Plaintiff's Brief in Opposition points to scant analysis in the context of medical marijuana and the ADA in an attempt to withstand Defendant's Motion. First, she cites the Ninth Circuit's footnote in *James*, which addressed the dissents perceived breadth of the holding. The Court remarked "We do *not* hold, as the dissent states, that medical marijuana users are not protected by the ADA in any circumstances. We hold instead that the ADA does not protect medical marijuana users who claim to face discrimination *on the basis of* their marijuana use." *James*, 700 F.3d at 397 n.3. (emphasis in original) (internal quotation marks omitted); *see also Hudnell v. Thomas Jefferson University Hospitals, Inc.*, No. 20-01621, 2021 WL 63252, at *2 n.2 (declining to grant employer's motion to dismiss plaintiff's failure to accommodate claims based on marijuana use alone when several accommodations were requested, and employer failed to engage in the interactive process).

Plaintiff also points to the Eastern District of Michigan's application of *James* in *EEOC v. Pines of Clarkston*, No. 13-CV-14076, 2015 WL 1951945 (E.D. Mich. Apr. 29, 2015). In *Pines of Clarkston*, Plaintiff, a licensed practical nurse properly prescribed medical marijuana under Michigan state law to treat her epilepsy, was

hired by the defendant to work as an administrator. On the second day of work she was required to take a drug test. The results were positive for marijuana. Upon discussing her results with her superiors, she was questioned about her epilepsy and told that it was not believed that she could perform the job. *See id.* at *1. Other record evidence indicated that her supervisor specifically stated that Plaintiff should not be hired due to her medical issues and that she would not be able to handle the stress. *See id.* at *5. Ultimately the Court determined that plaintiff had raised a genuine issue of material fact as to whether her dismissal was pre-textual. *See id.* at *7.

Here, the record evidence indicates that Plaintiff's demotion was strictly based on a combination of her medical marijuana use and failure to produce certain documents associated with her use and prescription.[9] Plaintiff asserts in her complaint that this demotion was due not only to her status as a medical marijuana user, but also her "actual and/or perceived disabilities." Pl.'s Compl. at 5. This facet of Plaintiff's complaint is belied by the record. Correspondence documenting the medical hold on Plaintiff's employment as a Phlebotomist II explicitly relates to her positive drug test and medical marijuana use. *See* Kubat Dep. at Ex E, F, G. This is in stark contrast with the facts of *Pines of Clarkston, supra*, where the record was replete with evidence of animus to the employee's disability. Nothing here, either in

---

[9] Concededly, the request for proof of Plaintiff's compliance with Pennsylvania's state medical marijuana laws is confounding. Plaintiff's offer letter indicated that employment was contingent on a clean drug screening. Kubat Dep. at Ex. C. The workplace policy in place at the time did not mention medical marijuana at all. Kubat Dep. at Ex. B. However, under the circumstances of this case, any deviation from the workplace policy in place at the time benefited Plaintiff, as she was not dismissed but found a job that accomplished the safety objectives of Defendant.

Defendant's request for documentation or correspondence related to the demotion, refers to Ms. Zimmerman's disabilities or other legally prescribed medication. *Id.*

Because the adverse employment action here was precipitated by Ms. Zimmerman's use of medical marijuana, she is not a qualified individual per the ADA. Further, whatever discrimination Ms. Zimmerman may or may not have been subjected to is likewise not cognizable under the ADA. Summary judgment is hereby entered in favor of Defendant, Health Network Laboratories, L.P., and against Plaintiff, Nicole Zimmerman, on Count I under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

This Court declines to exercise supplemental jurisdiction over Plaintiff's state claims under the PRHA, MMA, as well as any common law public policy claims. *See Shaffer v. Board of School Directors of Albert Gallatin Area School Dist.*, 730 F.2d 910, 913 (3d Cir. 1984). Those claims are dismissed without prejudice for potential refiling in state court.

## IV. Conclusion

Judgment is hereby entered in favor of Defendant, Health Network Laboratories, L.P., and against Plaintiff, Nicole Zimmerman, on Count I under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Plaintiff's remaining state law claims are hereby dismissed WITHOUT PREJUDICE.

GAIL A. WEILHEIMER, J.